## Brown's Case.

Argued December 9, 1942.

Before KELLER, P. J., BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Herbert J. Hartzog,* for appellant.

*E. G. Scoblionko,* for appellee.

OPINION BY BALDRIGE, J., February 26, 1943:

The outcome of this controversy before us depends largely on the construction of the word "incompetency" as used in Section 2 of the Teachers' Tenure Act as amended by the Act of June 20, 1939, P. L. 482, 24 PS §1126 (a), which in part reads as follows: "(a) The only valid causes for termination of a contract entered into with a professional employe in accordance with the provisions of this section shall be—immorality, incompetency, intemperance, cruelty, persistent negligence, mental derangement, persistent and wilful violation of the school laws of this Commonwealth on the part of the professional employe."

An appeal was taken by the School District of the city of Bethlehem from the action of the learned court below in affirming the order of the Superintendent of Public Instruction reinstating Gertrude Koller Brown, a professional employe under the Teachers' Tenure Act, supra, after she had been dismissed by the Board of School Directors.

Mrs. Brown was employed originally by the appellant as a dental hygienist in 1932 and continued to perform her duties in that capacity until September 3, 1941. She was married during the school year of 1937-1938 and executed a contract in a statutory form prescribed by Section 2 of the Teachers Tenure Act, supra, 24 PS §1126, on August 16, 1938. At the hearing before the court below it was stipulated that the transcript taken at the public hearing before the board, and the opinion

of the Superintendent of Public Instruction should be considered as part of the record.

In the court's findings, supported by competent evidence and therefore binding upon us, (*Lane's Appeal,* 141 Pa. Superior Ct. 259, 262, 14 A. 2d 573; *Horosko v. Mt. Pleasant Township School District et al.,* 335 Pa. 369, 371, 6 A. 2d 866; *Swick v. School District of Tarentum Borough,* 344 Pa. 197, 203, 25 A. 2d 314) the following facts appear.

Mrs. Brown advised the board by letter dated July 18, 1941, that owing to her physical condition, which necessitated medical treatment, it would be impossible for her to resume her professional duties at the commencement of the ensuing school year. Enclosed with this letter was one from her physician requesting that Mrs. Brown be granted a leave of absence for several months owing to her physical condition, stating "She will be able to return sometime during the school year." The secretary of the board wrote Mrs. Brown on July 30, 1941, that the rules of the board required that the physician's certificate should state the nature of her illness and that the matter would be held under advisement until this required information was furnished. Mrs. Brown on August 12 forwarded a letter signed by her physician in which he stated that "Mrs. Brown is pregnant and will be delivered in December."

Mrs. Brown was informed by the secretary of the board on August 30 that her request for a sick leave was denied. The board, after giving her an opportunity to resign, which she refused to do, passed a resolution at its regular meeting held October 31, 1941, preferring the following formal charges as grounds for her dismissal: (1) That since September 31, 1941, Mrs. Brown has been, and continues to be, incompetent to perform her duties as dental hygienist; (2) that from that date she has persistently neglected to perform her duties; and (3) that she has persistently and wilfully violated the schools laws of this Commonwealth. Mrs. Brown

was given due notice of a hearing which she attended accompanied by her attorney. Counsel agreed then that the charge of incompetency did not relate to educational qualifications but was limited to her physical incompetency. The school board found the charges aforesaid had been sustained and voted to discharge her and she was so notified by registered mail.

Counsel for Mrs. Brown asserts that the word "incompetency" as used in the act relates solely to the educational qualifications. Our Supreme Court has adopted a broader interpretation and a majority of the members of this court are of the opinion that the term should be construed to embrace lack of physical ability to perform the duties incident to the employment. In *Horosko v. Mt. Pleasant Twp. Sch. Dist.*, supra, pp. 374, 375, Mr. Justice LINN said: "The term 'incompetency' has a 'common and approved usage'. The context does not limit the meaning of the word to lack of substantive knowledge of the subjects to be taught. Common and approved usage give a much wider meaning. For example, in 31 C. J., with reference to a number of supporting decisions, it is defined: 'A relative term without technical meaning. It may be employed as meaning disqualification; inability; incapacity; lack of ability, legal qualifications, or fitness to discharge the required duty.' In Black's Law Dictionary (3d edition) page 945, and in Bouvier's Law Dictionary, (3d revision) p. 1528, it is defined as 'Lack of ability or fitness to discharge the required duty.' Cases construing the word to the same effect are found in Words and Phrases, 1st series, page 3510, and 2d series, page 1013. Webster's New International Dictionary defines it as 'want of *physical,* intellectual, or moral *ability;* insufficiency; inadequacy; specif., want of legal qualifications or fitness.' Funk and Wagnalls Standard Dictionary defines it as 'General lack of capacity of fitness, or lack of the special qualities required for a particular purpose.' (Italics supplied.)"

Our attention is directed by the appellee to the fact that Section 2 of the Teachers' Tenure Act, supra, as amended, 24 PS §§1126 (a) and (b), contains mandatory provisions pertaining to a dismissal of a professional employe for incompetency by a rating under an approved system giving consideration to "personality, preparation, technique, and pupil reaction" and that "no teacher shall be dismissed" until the rate records have been kept or filed by the board. That was not done in this case. We cannot adopt the theory, however, that the legislature intended a compliance with this provision as a condition precedent to a valid dismissal of a professional employe, whose incompetency has nothing to do with the requirements specifically mentioned, but relates solely to her physical inability to perform her duties, which as above stated is not in dispute. If Mrs. Brown had been rated and received perfect marks covering the matters specified her physical inability still rendered her incompetent under the meaning of that term and subjected her to dismissal. In construing the act we may presume that the legislature did not intend an absurd or unreasonable result: *Swick v. School District of Tarentum Borough,* supra, p. 251.

This particular school district has no rule or regulation dealing with the situation of a married professional employe who becomes pregnant. See *Ambridge Borough School District's Board of School Directors v. Snyder,* 346 Pa. 103, 29 A. 2d 34. Mrs. Brown has taken the position that such a condition entitles one to a sick leave and that her dismissal is impliedly prohibited under Section 1206 of the School Code of May 18, 1911, P. L. 309, as amended 24 PS §1162, which provides, inter alia; "Whenever a teacher is prevented by sickness or some other unavoidable circumstance from following his or her occupation, the school district may, at the discretion of the directors, make such payments of compensation during the period of absence

from duty as the exigencies of the case may seem to warrant: ......"

That language gives the directors authority, in their discretion, to make payments only where the absence is due to sickness or some other unavoidable circumstance.

We must bear in mind that Mrs. Brown was not being discriminated against because of her marriage, which occurred long prior to the events we have recited. Her dismissal was due neither to that fact nor to her legitimate pregnancy, but because she became incompetent due to her physical incapacity to discharge her duties.

A consideration of the remaining charges becomes unnecessary in view of our decision that the charge of incompetency was properly sustained. Whether the court below, as asserted in connection with the second assignment of error, should have found that Mrs. Brown's absence impaired the execution and efficiency of the dental and medical programs, becomes an immaterial question. As a matter of fact, any inconvenience produced as a result of the established incompetency, as well as the probable duration thereof, do not affect the fundamental ground for dismissal except insofar as they were factors to be considered by the board in determining whether it should reasonably press the charge for which a substantive basis existed. Upon such matters, the discretionary powers of a board are broad (*Robb et al. v. Stone et al.,* 296 Pa. 482, 492, 146 A. 91) and we are unable to discover any indication of an abuse thereof by this appellant.

Accordingly the first assignment of error is sustained.

The judgment of the court below is reversed and the order of the school board is reinstated; each party to bear its own costs.

RHODES, J. dissents.