**Bricker v. Schultz**

*William A. Hebe,* for plaintiff.
*George M. Hess* and *John R. Miller,* for defendants.

GREEVY, P. J., September 19, 1973.—On December 15, 1972, the Montgomery School Board adopted a "policy statement" providing circumstances under which a teacher's biweekly pay check may be withheld by the school board or by the superintendent when the school board is not in session. The circumstances include: (a) failure to submit official State reports in a timely manner; (b) refusal to accept an assignment which the board and/or superintendent has the power to make; (c) a neglect of duty; (d) insubordination; (e) such other conduct as is unbecoming to a professional staff member. The statement provides further that a teacher aggrieved by the action shall, upon written request, be afforded a hearing before the board.

Plaintiff, Mary Jane Bricker, individually, and as guardian ad litem for the members of the Montgomery Area Education Association, filed a complaint in equity seeking an injunction against defendants, Robert F. Schultz, Superintendent, Montgomery Area School District, and Mrs. Martha Miller, Secretary of the Montgomery Area School Board, as guardian ad litem for all members of the Montgomery Area School Board, to enjoin and restrain defendants from enforcing or implementing the "policy statement" and such other relief as the court may deem proper.

We make the following

## FINDINGS OF FACT

1. The Montgomery School Board adopted a "policy statement" that provided for the withholding of pay under certain enumerated circumstances.

2. The school board has withheld teachers' pay checks pursuant to the "policy statement."

3. Plaintiff has standing to bring suit, both individually and in her representative capacity, and a right to appeal the action of the school board to the court of common pleas: Act of December 2, 1968, P. L. 1133, 53 PS §11301, et seq.; McDonald v. Penn Hills Township School Board, et al., 7 Comm. Ct. 339 (1972).

4. The Public School Code of March 10, 1949, P. L. 30, 24 PS §1-101, et seq., gives the Board of School Directors the authority to regulate the conduct and deportment of teachers.

5. The Public School Code of 1949, supra, provides for the withholding of pay only in certain circumstances, none of which are included in the Montgomery School Board's "policy statement."

## DISCUSSION

The effect or import of a "policy statement" as opposed to a rule or regulation, has not been made clear. If the "policy statement" purports to be a rule or regulation enacted by the school board permitting sanctions other than those authorized by the legislature, it is clearly not permissible under the Public School Code of March 10, 1949, P. L. 30, 24 PS §4-401, et seq. The Public School Code, supra, art. V, sec. 510, 24 PS §5-510, provides:

"The board of school directors in any school district may adopt and enforce such reasonable rules and regulations as it may deem necessary and proper, regarding the management of its school affairs and the conduct

and deportment of all superintendents, teachers, and other appointees or employes during the time they are engaged in their duties to the district, as well as regarding the conduct and deportment of all pupils attending the public schools in the district, during such time as they are under the supervision of the board of school directors and teachers, including the time necessarily spent in coming to and returning from school."

The Supreme Court of Pennsylvania, in the case of Cerra v. East Stroudsburg Area School District, 450 Pa. 207 (1973), stated, at page 211:

"Under the Public School Code of Pennsylvania, supra, specifically, Art. V, §510, 24 PS §5-510, the board of school directors in any school district 'may adopt and enforce such reasonable rules and regulations as it may deem necessary' regarding the conduct and deportment of all teachers during the time they are engaged in their duties to the district. However, under the Code, specifically, Section 1122, 24 PS §11-1122, a teacher's contract of employment may be terminated by the board only on certain specified grounds." (footnote omitted.)

As can clearly be seen from the enumerated circumstances permitting action by the board, the "policy statement" is an attempt to regulate the conduct and deportment of the teachers in the school district. Failure to submit State reports, refusal of assignments, neglect of duty, insubordination, as well as other misconduct, can all prompt the board to act.

It is not the purpose here to rule on the reasonableness of those regulations, but the sanctions for violation of these rules are not authorized by this or any other section of the code.

"A School District is a creature or agency of the Legislature and has only the powers that are granted by statute, specifically or by necessary implication":

(citations omitted) Barth v. Philadelphia School District, 393 Pa. 557, 562 (1958); Chartiers Valley Joint Schools v. Allegheny County Board of School Directors, 418 Pa. 520, 544 (1965). See also Monaca School District Appeal, 52 D. & C. 2d 447, 450-452 (1971).

The school board is not without the ability to enforce its rules and regulations, if reasonable. Section 1121, 24 PS §11-1121, provides for the procedure to be followed if the school board wishes to terminate the employment of a professional employe and, together with section 1122, 24 PS §11-1122, which lists the causes for termination, restricts the school board's power to terminate employment.

The only section of the act to provide for suspension of pay is section 1532, 24 PS §15-1532, which provides that penalty for failure to submit records and reports of pupils at the end of the term.

Section 407, 24 PS §4-407, to which the school board refers, permits the school board to adopt such regulations as are required for its own governance and does not authorize the regulation of others. Nowhere in the code is found authority for withholding pay checks for violation of the rules of a school board. In view of the section pertaining specifically to suspension and termination, we find that these are the proper remedies to be applied by the school board for the enumerated infractions.

Discretionary power such as was vested in a school board is not unlimited and equity will intervene in the public interest where the school board has been guilty of an error or misapplication of the law: Myers v. Newtown Township School District, 396 Pa. 542, 544 (1959).

In adopting the questioned "policy statement," the Montgomery School Board was not acting within the scope of its statutory authority. Therefore, a court of

equity has the power to intervene and enjoin the Montgomery Area School District, its Board of Directors and Superintendent, from enforcing or implementing the "policy statement."

In line with the foregoing, we make the following

## CONCLUSIONS OF LAW

1. Equity has jurisdiction and the parties are properly before the court.

2. The Montgomery Area School Board has exceeded its statutory authority by providing for sanctions in its "policy statement" not authorized by law.

3. Proper sanctions, i.e., suspension or termination, are provided for by statute.

## DECREE NISI

And now, September 19, 1973, upon consideration of the testimony, documentary evidence submitted, the briefs and arguments of counsel, it is hereby ordered, adjudged and decreed, that defendants, Robert F. Schultz, Superintendent, Montgomery Area School District, and Mrs. Martha Miller, Secretary of the Montgomery Area School Board as guardian ad litem for all members of the Montgomery Area School Board, are enjoined from implementing or enforcing the "policy statement" adopted on December 15, 1972, and are further enjoined from withholding pay checks of the professional staff pursuant to said "policy statement."

The prothonotary is ordered to enter this decree nisi and to give notice to the parties, or their counsel of record, of the entry of this decree, and if no exceptions are filed within 20 days thereafter, the decree shall be entered as a final decree by the prothonotary as of course.