110 Pa. Commonwealth Ct. 164 (1987)
531 A.2d 1186
Michael Cowdery, Petitioner
v.
Board of Education of the School District of Philadelphia and Constance Clayton, Superintendent of the School District of the City of Philadelphia, Commonwealth of Pennsylvania, Respondents.
No. 1693 C.D. 1984.
Commonwealth Court of Pennsylvania.
October 8, 1987.
Argued June 11, 1987.
*165 Before President Judge CRUMLISH, JR., Judge COLINS (P.), and Senior Judge NARICK, sitting as a panel of three.
Lon Edward Mamolen, with him, Benjamin F. Levy, Segal, Wolf, Berk & Gaines, for petitioner.
Patricia Donovan, with her, Andrew M. Rosen, for respondents.
OPINION BY PRESIDENT JUDGE CRUMLISH, JR., October 8, 1987:
Michael Cowdery appeals an order of the Secretary of Education (Secretary) affirming a Philadelphia School Board decision dismissing him pursuant to Section 1122 of the Public School Code of 1949 (Code).[1] We reverse.
*166 Cowdery, a tenured high school teacher for the Philadelphia School District, was concurrently employed full-time by the Philadelphia Police Department. While recuperating from a hand injury sustained on police duty,[2] Cowdery worked a desk job for the Police Department and took six weeks of paid sick leave from the School District. Upon his return to the classroom, the School District informed him of his violation of its policy prohibiting outside employment during a period of sick leave.[3] Cowdery offered to return all sick-leave monies, but the offer was refused and he was dismissed.
The Secretary determined that Cowdery knew or should have known of the School District's policy and that his actions were sufficient to warrant dismissal for persistent and willful violation of school laws and immorality. Section 1122.
Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated or necessary findings of fact were unsupported by substantial evidence. 1 Pa. C. S. §704; Ward v. Board of Education, 91 Pa. Commonwealth Ct. 332, 496 A.2d 1352 (1985).[4]
*167 Cowdery contends that the record lacks substantial evidence to support the Secretary's finding that he was aware or should have been aware of the School District's policy. He alleges that the School District failed to take steps to advise its employees of the policy, which had been adopted approximately seven months before his sick-leave period. Cowdery argues that because the School District failed to establish the requisite elements of knowledge and intent, it has not sustained its burden of proving a Section 1122 violation.
The School District responds that the School Board permissibly determined questions of credibility in its favor and that it is unreasonable to require the School District to prove that Cowdery was personally aware of a publicly adopted policy.
This Court has interpreted a "willful" violation under Section 1122 as requiring the "presence of intention, and at least some power of choice." Lucciola v. Secretary of Education, 25 Pa. Commonwealth Ct. 419, 422, 360 A.2d 310, 311 (1976). While the element of willfulness or intent can often be inferred from the nature and extent of the particular violation, such intent is not to be presumed where the facts do not otherwise so indicate. See Clark v. Unemployment Compensation Board of Review, 59 Pa. Commonwealth Ct. 100, 428 A.2d 1038 (1981).
In this matter, it is apparent that the Secretary imputed the element of willfulness to Cowdery, based on three observations:
Given the fact that the policy was longstanding, that both of Appellant's employers had policies prohibiting, to some extent, outside employment, and that Appellant admittedly acted in a manner that kept his employment status a secret from both employers, we find that the Board acted reasonably in concluding that the Appellant *168 knew or should have known of the District's policy regarding sick leave.
Secretary's opinion, p. 6. Our review of the record reveals that the Secretary's findings and the inferences drawn therefrom are not supported by substantial evidence.
Initially, we note that the seven-month period between the adoption of the policy and Cowdery's alleged violation would, in most circumstances, be sufficient to impute knowledge to an employee. However, the record in this instance is devoid of evidence that the sick-leave policy was communicated to School District employees in a manner reasonably calculated to notify them of its existence.[5] Although there was testimony that other *169 policies had in the past been posted on bulletin boards, individually mailed or available for review in so-called "grey books" kept at each school, the School District presented no evidence that these notification procedures were followed in this instance. Inasmuch as the School District failed to sustain its burden of proof on this issue, we hold that it is unreasonable to infer that Cowdery knew or should have known of the sick-leave policy.
The School District further contends that a willful violation of sick-leave policy should be inferred from the Secretary's finding that Cowdery acted in a secretive manner. We disagree. While Cowdery testified that he did not inform either of his employers that he was working two full-time jobs, we do not believe that this was a material omission.[6] Cowdery was not asked to report nor told of his duty to inform the School District of his police employment. There is no evidence that he misrepresented his dual employment status. As a general rule, outside employment was not prohibited by the School District. The Secretary's attempt to infer a willful violation of the School District's sick-leave policy from Cowdery's apparent violation of Police Department policy is misplaced. In light of Cowdery's overall performance and apparent commitment to each of his *170 jobs,[7] we cannot say that the alleged willful and persistent violation of school laws is reasonably inferred from the facts of this case.[8]
Based on our resolution of this matter, the record is remanded, and the Secretary is directed to reinstate Cowdery to his former position or a position commensurate therewith. The Secretary is also directed to determine to what extent Cowdery is entitled to backpay and interest.[9]

ORDER
The order of the Secretary of Education, No. 5-83 dated May 10, 1984, is reversed. The record is remanded to the Secretary for proceedings consistent with the foregoing opinion.
Jurisdiction relinquished.
NOTES
[1] Act of March 10, 1949, P.L. 30, as amended, 24 P.S. §11-1122.
[2] Cowdery fractured his right hand in the course of apprehending a felon. The injury, specified as reflex sympathetic dystrophy, severely affected his ability to use his hand.
[3] On June 22, 1981, the School Board adopted the following policy in public session:

Resolved, that all employees of the School District of Philadelphia who are on approved sick leave and are being compensated either by sick leave or health insurance shall not be permitted to engage in any remunerative occupation during the duration of their sick leave.
[4] Substantial evidence has been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It must be more than a mere scintilla of evidence or suspicion of the fact to be established. Ward.
[5] Essentially, the School District contends that because the sick-leave policy was enacted at a public meeting and was available for review by the school employees, the employees are deemed to be aware of it. We cannot agree.

A statement of policy does not have the same force of law as does an administrative regulation. Rather, general policy statements ordinarily presage formal rulemaking or announce the course which the agency intends to follow. See Pennsylvania Human Relations Commission v. Norristown School District, 473 Pa. 334, 374 A.2d 671 (1977) (desegregation guidelines enunciated by the Human Relations Commission are "statements of policy" and not "regulations" subject to the filing and publication requirements of the Administrative Agency Law). At first blush it would appear that as a "policy" statement, the School District's sick-leave resolution would not be subject to the same notice and publication requirements as an administrative regulation. Generally, this is true. However, because the instant "policy" purports to institute a specific prohibition not subject to a wide variance of interpretation, we hold that some showing of adequate notification to those employees affected thereby is required. To permit the School District to strictly enforce this "policy" without any evidence of a dissemination reasonably calculated to inform Cowdery and others similarly situated of its existence offends principles of due process and fundamental fairness. Upon this record, we cannot say that Cowdery should have been aware of the School District's sick-leave policy.
[6] The School District also maintains that Cowdery concealed the reason for his absence and that had he been forthright about his injury, the principal may have been able to inform him of the sick-leave policy. We find this assertion somewhat speculative. Further, we note that Cowdery's use of sick leave was for a legitimate medical reason. Again, there is no evidence that he ever misrepresented the extent or origin of his disability to the School District, only that he failed to voluntarily communicate the specifics of his injury to the principal. We do not believe that this omission was tantamount to a willful and persistent violation of school laws or immorality.
[7] The record reveals that Cowdery attempted to return to the classroom prior to full recuperation out of his concern for his students. He had received favorable reviews throughout his tenure at the high school. Aside from two specific reports, the record also reveals that his performance as a police officer was similarly satisfactory.
[8] The Secretary's finding of immorality, based upon the perceived deception which Cowdery allegedly worked upon his employers, is likewise without an evidentiary basis, as the School District failed to prove that his actions were willful or deliberate.
[9] Section 1130 of the Code, 24 P.S. §11-1130, provides that "there shall be no abatement of salary or compensation" following a wrongful dismissal. The Secretary may consider earnings from other sources as setoff against compensation, however, income derived from a position which Cowdery could have held concurrently is not to be set off against backpay. Shearer v. Secretary of Education, 57 Pa. Commonwealth Ct. 266, 424 A.2d 633 (1981).